2012, 1094. We'll hear from Ms. Stahl when she's ready. Good morning. May it please the Court. This case involves issues of claim construction, obviousness, and moral infringement. I'd like to start with obviousness. Could I ask a background question? Yes. Aircraft data representative of the continuously monitored, yada, yada, okay. What is that? We have reference in the briefs to the black, you know, celebrated black box. Who decides which data is representative? Is this the government? Does the FAA do it? Is there an industry standard? I actually don't know. I can look at column one of the patent, and I think that this data is defined as being the data that's typically included in the black box recorder. Also, there's some suggestions. Let's think about it for a second. If it's the black box data, is the data that someone has determined is what you'd like to know to learn if there was a problem, a crash, or something like that? It's not just, it isn't, is it just, you don't know the answer, but so are you suggesting that United Airlines could decide what it wanted to record? No, I would think that this is data that the FAA has indicated should be included in the black box. And so it's data that is significant, and what your client chopped out was some of that very representative data, correct? The five-minute segment or whatever, I'm talking about the workarounds for the old 727.  Your client said, we make a decision that there's a piece of this black box information that we can chop out that will not be transmitted once we get on the ground to whoever it is that might want to know what happened. Our client has the authority to simply remove any part of that they want, correct? Yes. That's our position. If you'd like, I could talk about the claim construction issue before I talk about obviousness. That goes to the claim construction issue. I don't want to interrupt your argument, but I just was trying to figure out, because when I read the patent, I could not figure out, you know, if I were a competitor, how do I know what aircraft data representative is? For a start, how do I know? I mean, I realize there's not an indefinite challenge to the claim. Go ahead. Mr. Hall, I'd like to hear about the obviousness issue. Certainly there are references here which talked about using spread spectrum technology and including for aircraft use, but you had a jury verdict. And you had a fairly thorough JMOL opinion, which supported the jury and pointed out a long felt need, how the references had shortcomings. How are you going to overcome that? I don't think the references do have shortcomings. So let's start with FCM 69. What the district court held there was that FCM 69 taught away from the invention. That was the key part for the district court in finding that there wasn't substantial evidence. But there's no way FCM 69 teaches away. If you look at page 3972, FCM 69 says, use spread spectrum instead of infrared. Use it instead of coaxial cable. Wasn't it a teach away argument based on the slowness? Well, yes. I mean, to the jury. When the jury hears this and they say, well, you know, this is like snail mail in an email room. It's not snail mail. It's one megabit per second. It's true, isn't it? It's slower. It's true that it's slower. It's slower. That's true. But it also has fewer errors. And the very purpose of the FCM 69 reference was to say, use spread spectrum. If you look at page 83972 of the record and 83973, you'll see that the reference teaches disadvantages of gateways. Maybe the jury decided that the fewer errors didn't make that much difference because your client just chops a whole lot of the information out anyhow, which means that the data representative isn't accurate. Error isn't all that important. I understand what you're saying, but if you look at cases like N. Ray Gurley that talk about what teaching away is, I don't think that the jury was entitled to find teaching away just from mere criticism. There isn't anything in FCM 69 that says, don't use spread spectrum. In fact, to the contrary, it says, use this. I thought part of the problem with the 103s from the perspective of the district court as well as the record was that whoever tried the case didn't put the pieces together, didn't make the combination arguments that you're now making. I don't believe that that's so. If you look at the record, those arguments were, in fact, made specifically to the jury. A2304 through 05 specifically puts together, for example, L1011 in combination with FCM 69. And, you know, it was even encouraged the jury to look at these references. And the two-way combination, I agree. Excuse me? Combining those two references. Yes, and also talked about using NG and the teachings of NG and combining NG with the admitted prior art. NG is the reference where there's a train, and in the train, it says specifically in NG that you are continuously collecting the data, you're storing the data, and then you're going to transmit it using spread spectrum. And NG says, use me in an airplane. The district court did not even acknowledge that teaching in NG. So you're disagreeing with the jury finding? I'm saying that no reasonable jury could have concluded the way the jury did, given the strong evidence of obviousness here. The only difference between the prior art and the claims was the use of spread spectrum. The FAA had specifically said, collect this data, look at this data. And so the prior art was rich with examples of doing just that. The only difference was using spread spectrum instead of some other technique. And then you had FCM 69, two months before the invention, Harris's invention, and that specifically says, use spread spectrum. And again, I really ask that you look at page A3972 when you have a chance, because that talks about how with gate link there was problems. So the gate link system used coaxial cable. You'd have to have a tether between the airplane and the airport with infrared. That's just like your TV remote control. You have to have a direct line of sight between the airport and the airplane. Then you have sneaker net. You have to hire an employee and have them go and get the floppy disk off the airplane and take it in. Those are disadvantages. FCM 69 reference isn't teaching away from using spread spectrum. Yes, it has some tradeoffs. It says it can be slower, but it also says it doesn't have as many errors. I thought it said it had higher rates, limited operability because it could only be used with three aircraft at a time because they would interfere with each other. I think that that's what the district court said, and that's what was said by Harris during the argument. But you can't ignore the teachings of the reference itself. And in fact, FCM 69 says that you can have as many as 25 type 3 users, with type 3 users being the kind that are using these large data files. And that's at page A3979. It says specifically type 3 user 25. So I think that you can't ignore the plain teachings of the FCM 69 reference. And those teachings, the four square corners of that reference, show that this patent would have been obvious and no reasonable jury could conclude otherwise. I commit the same thing with respect to Ng. Going back to Ng for a minute. In Ng, you have the suggestion specifically to put the invention in airplanes. And then the only question is, when you put it in airplanes, are you going to transmit during the flight? Well, you can't. This is spread spectrum. And as Ng teaches, you've got to transmit within one-half to one-quarter mile. So you would have to transmit at the end of the flight necessarily, or it wouldn't work. Also, we looked at Ng in view of the admitted prior art. The admitted prior art says in airplane applications, you collect the data, you store the data, and then you transmit the data after the flight. Well, one of the ordinaries is not in automaton. And knowing about Ng and Ng saying use spread spectrum to transmit in trains and then saying use that in airplanes, obviously you wouldn't transmit until after the entire flight. And there's even evidence admitting that from Harris' own inventor, admitting that if you wanted to gather more data, collect more data, you'd just increase the storage size. Mr. Hibson's testimony was relevant to the validity issue, wasn't it? Mr. Hibson talked about FCM 69.  And the jury had grounds if it wanted to discredit Mr. Hibson sort of across the board, right? I would think that if the jury wanted to discredit his testimony, it could. But Mr. Hibson did not take anything from the four square corners of FCM 69. And even if they could discredit Mr. Hibson, that doesn't mean that they could discredit FCM 69. What did he testify to about FCM 69? If you look at his testimony, the things where he was arguably discredited were things like, did he make a prototype? He had said yes during his deposition, but later he said no. It has nothing to do with the four square corners of what FCM 69 teaches. He also said they asked him if there would be more errors. There's some testimony about that. If you look at that testimony that was cited, it actually, he was asked a hypothetical. He was asked, assume that CDMA, which is a particular type of spread spectrum, operates differently than it actually does. Wouldn't there be more errors? And he said yes. And that's the testimony that's cited by the district court here. That's not substantial evidence. And in any event, mere credentials would not teach him well. What I'm trying to get at is that we know what Mr. Hibson said that turned him into a less than super witness for your side. And what I was trying to get at is to what extent the jury sitting there hearing him say, well, I'm going to get my thumb on the scale in favor of FedEx because they're a big client of ours. I'm here to do a job for them. That's what he was, the jury could have heard him to say that. To the extent that he was talking it all and trying to support your arguments for obviousness, you might think, well, the jury could sit there and say, hey, I'm just not going to pay attention to this fellow, which they're entitled to do. I, well, I don't think they can then ignore the reference itself, the four square corners of the reference. But he did testify as a slower data rate and whatnot on the FCM 69. He admitted, as the reference teaches, that it has a slower data rate, but it's still very fast. It's 100 megabits per second. Would you like to say the remainder of your time? It's fast enough to provide this application. Yes, please. Well, could I just say one thing real quick about infringement? Your time. Okay. So I guess I'm willful infringement as well. For willful infringement, I just want to note that at a minimum, this obvious misdefense is reasonable. And at a minimum, our non-infringement and claim construction positions are reasonable. And under the objective prong and barred, there should be no willful infringement finding here. With respect to infringement on the claim construction issue, I would just point out that we've got the antecedent basis. Given the antecedent basis relationship in the claims, there's a particular way that you should review the storing step. The data that's transmitted should be the same as the data that's transmitted. The claim construction argument is pretty straightforward in your brief. And it leads to a conclusion on you that FedEx is entitled to chop as much out of the required data as it wants to to avoid infringement. And your argument is that the representative data is the such data, such data, such data, and that's what's transmitted, right? Yes. Right. And so you say we agree with you on claim construction, then the teacher rounds, the designer rounds don't infringe because the representative data didn't get transmitted. Right. Our position is that there's data that was stored that wasn't later transmitted. You could have chopped half of it out under your theory. Let me ask you briefly, very briefly about mootness. FedEx has taken these systems out of its planes. Where's the case of controversy? FedEx might choose to put those systems back into the plane. In fact, the district court's order… In other words, jurisdiction exists based on future possibilities? No, there's an injunction in place right now. There is an injunction that prohibits FedEx from using that system. And FedEx has never said that it's not going to use the system. In fact, if you look at the district court's order on the injunction, it says specifically when he granted the injunction, the system was already removed. And he said FedEx has not indicated that it's not going to put these systems back on, and that's why it granted the injunction. We'll give you two minutes back. Thank you. Mr. Fortquist. Thank you. May it please the court. The central issue that we seem to be missing when we're talking about the FCM-69, the Ng patent, is that it's viewed through the eyes of one of ordinary skill in the art. And that, the definition of one of ordinary skill in the art was completely missing from Federal Express' brief. It's a fairly young engineer, three to five years' experience. So the question to a jury, a factual question, is what would this young engineer with three to five years' experience take away from these references? The record is devoid. It's completely missing of any explanation of what these references show to one of ordinary skill in the art. How one would view the references, how one would view the timing, how one would view the error rate. None of that was developed during trial. And so Federal Express is left with the theory that, well, let's ignore all that happened at trial. And let's just focus on these references, and I'll explain what they mean to me as opposed to one of ordinary skill in the art. To do so is, of course, the hindsight analysis that's so difficult to overcome. And so what this court has done is said, well, let's not only look at what one of ordinary skill in the art would view the references, but let's look at the secondary considerations. And those secondary considerations are also fact questions for which presented to the jury, and the jury found that all the secondary considerations favored Harris. So really, while it's a legal issue, ultimately, that of obviousness, the underlying factual basis, what one of ordinary skill in the art viewed those references as, whether there's a motivation to combine, no evidence. And what was the downside in what one of ordinary skill in the art can see as whether there's a probable success if I follow that path. All those were factual issues decided by the jury first, and then by the presiding judge. Moving to the issue of the claim construction, and let me address just for now. Can you help me out a little bit about what data representative of the continual thing is? Is that a government standard? Well, there's government standards that talk about what's under FDAL. Under which? It's a DFAAU. It was a program that was started. And what they said is, we want you to try and keep an eye on how the planes are flown and maintenance and the like. And what the trial testimony was is that one of ordinary skill in the art in avionics would understand what type of performance data would be required to have a representative for that data. I saw that reference. I just didn't know whether it was government driven. The reference to the black box is what had caused my mind to get lost. It was government suggested that the airline should take this type of program in order to sort of keep an eye on how the planes are flown. And I think, and this is not part of the record, but ultimately it failed because of pilot unions and the like. But the program... But the government wouldn't care if your black box was empty. The government would care that the black box... Black box is mandated. But this... Is the black box information part of what data representative is? Yes, sir. It sort of mirrors the black box. That same information that the black box stores can also be used for the data representative of the flight performance, if you follow me. Well, that's what I was trying to get at. I mean, because it's the... So there is some significance to the data in there for the company that's got their planes, but also to the public interest in terms of knowing what the so-called black box information is. That's correct, yeah. And FedEx decided willy-nilly just to chop some of that out. Well, yeah, let me address that for a minute. The system planes or comprising planes, they talk about the system. FedEx, what they did, they didn't chop it out. They added some software that said, if we choose, we can choose to not have five minutes, this insignificant portion of time, five minutes from the middle of the flight. But the system still infringes. It still has the software that downloads the entire data of the flight performance. So the system that is still on the... But doesn't the system require transmission? The system requires it capable of transmissions, capable of infringing, remaining, because it's software-driven. And I think the... What is the theme? But I thought the argument was that they were home free on infringement on the designer rounds if their claim construction was correct. I don't believe that to be the case. I believe that if the system is capable of infringing, and that's the Sportsline case, if the system... I'll have to look at your brief to see. My understanding on the infringement issue was that FedEx was trying to say the designer round products don't infringe because they don't transmit representative data. We've cut some of the representative data out. And that was their argument. But because of the claim construction, we never tried the issue of whether... Well, if you didn't try the system case, then it's a little late to try it here today, sir. Well, certainly. But what I'm trying to do is make sure that the court understands that... Okay. You're not... I mean, for example, if the panel were to rule that FedEx was correct on the claim construction, it would be permissible for us to say that they were entitled to a non-infringement as to the designer rounds. Well, I would argue that... On the case that was tried. Well, I would say that I would disagree with the court because that issue was not addressed on whether the systems remain capable of infringing. Well, if the issue wasn't raised, it wasn't raised until late. Well... I mean, what... In all fairness, I mean, I... And I didn't understand this from your brief, so I thought it was sort of up and down on the claim construction that FedEx prevails on what it thinks has to be transmitted. Okay? Then its designer rounds don't infringe. And I don't... The group that the presiding judge pointed to that asked the question about moot. Right. And I don't... And I believe that the claim construction would have no impact, ultimately. Because I still... Well, you're saying the claim construction would have no impact on the system, on a system claim that only required something that was capable of transmitting. That's correct. But I didn't see that in front of the jury. No, that wouldn't be in front of the jury because of the court's claim construction. But you didn't try that case. Right. But there was no reason to try that case because the claim construction held that it required... Well, the five minutes wouldn't have any impact on how the court construed it. Before we go any further, I'd like... Because BARD came down after you had briefed it, and also both Chiefs briefed, and it sort of turns... The trial judge didn't have the benefit of it. How do you deal with BARD? Well, the judge cited that it was a fact question in his order without the benefit of BARD. But as you read the court's order, I think it's A-76 in the appendix, the judge went ahead and considered evidence in all the factors that were... the summary judgment materials, things like that. So I think the court still dealt with it as a legal issue. While he references the law of time, I think a fair reading of the judge's willfulness analysis is that he treated it as though it was a legal analysis. And he didn't rely strictly on factual findings. He relied upon certainly some factual underpinnings. But he took it as a whole and did a very thorough job of trying to... How would the judge, if he had in that mix, in his own mind, his view that FedEx didn't have a leg to stand on on their claim construction, right? So if we were to reverse the claim construction to say that he got it wrong with regard to what had to be transmitted, and then it sort of goes back to him for de novo review of the objective test, then don't you think he's going to look at that case differently than he looked at it when all he had was the jury verdict? I don't. His claim construction? I don't because bear in mind that the timeline, the software patch was not added until the case was well underway. So there were several years that Federal Express willfully infringed without any suggestion that they had a design around and without any need for any claim construction. What about your comments, Ms. Stahl's comments about the references, which pretty clearly led to use of this technology on airplanes? And the jury verdict isn't inviolate. That's true. Well, remember that... What's true? Pardon? What's true? That a jury verdict is not inviolate. Okay. Well, I was wondering if you were addressing the entire thing. I'll try to be more specific. The FCM-69 certainly addresses planes. It doesn't address the flight performance. We don't see what the FCM-69 is designed to record or transmit or what's done with it after the plane lands. It was a future concepts and maintenance, and there's references to the maintenance materials being transferred, the passenger logs being transferred. And that's the key of why one of ordinary skill in the art would have to analyze this FCM-69 art. The Ng reference simply has a line that says we can apply it to planes, but there's no description of how you would apply it to planes. But even without that, it is spread spectrum technology and applies to trains, transportation vehicles. Yes, sir. It could apply in trains, but the uniqueness of spread spectrum is it's fairly limited range. And so the way the Ng reference was set up, as it went by a station, it would shoot information to a receiver as it went by the station. An airplane, as it flies, wouldn't have that type of range. And while one may suggest that, well, it would be inherent that we would store it all up and then do a data dump at the end of the flight, nothing in the record suggests that one of ordinary skill in the art would see that. And there's nothing in the reference itself that would suggest that. And so the simple range of an aircraft, as it's passing by various locales and receivers, spread spectrum wouldn't be effective for that. And that's the type of thing that I urge the court not to lose sight of with respect to one of ordinary skill in the art, is that in hindsight, we can use the Harris patents or say, well, all these steps can be matched up with certain references. You're asking us to take the cases that was tried, not as somebody else might have tried it another time. Yes, sir. Because when you stand back and look at this case, you say, gee whiz, if I get all three of those references put together, and I have a reason to combine the references, you've got everything you need. Well, then we have a different case, and I would have the evidence that would develop otherwise. I certainly won't concede that all that's there, but certainly that would have been a different case to try and a different case for the jury to decide if that had been the case. Now, well, we got to cover the issue of mootness, covered the issue of willfulness and the non-infringement position. Just, I'd like the court to bear in mind the issues of secondary consideration that all went in favor of Harris, all fact questions, and the clear and convincing standard that's required by Federal Express. Thank you, Mr. Gilchrist. Ms. Stahl has a couple of minutes. Sure. First, I'd like to point out that if this court decides to change the claim construction, there should be a new trial on obviousness. Specifically, at page A2291, it was argued to the jury that the prior did not teach downloading comprehensive flight performance and comprehensive long-term picture of the entire flight. So if this court were to change that construction, there should be a new trial on obviousness. In addition, I wanted to point out that it was pointed out that the record is devoid if I wanted ordinary skill in the art would view the references. We would disagree. FedEx used witnesses like Harris' own inventor, the inventor of FCM 69, and asked the jury themselves to look at this prior art. With respect to expert testimony being needed here, expert testimony isn't needed because this is a simple dispute, and the question is, looking at the four corners of the reference, whether a reasonable jury could conclude that the claims are not obvious. Finally, with respect to willfulness, one of the questions that was asked was whether the judge had decided it was a matter of law. If you look at page A76 of the record, you'll see the district court actually held that substantial evidence supports the jury verdict. With respect to the question of whether there's still an infringement issue or whether there should be a remand for infringement, we would disagree. That's the first we've heard that. We haven't seen it in the briefs. Also, I'd point out the ball container case, which holds that capable of being configured to infringe is not enough, even for an apparatus. Thank you for your time. Thank you, Ms. Stahl. We'll take the case under review. Thank you.